**NOT FOR CITATION**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE CABLE NEWS NETWORK AND TIME MAGAZINE "OPERATION TAILWIND" LITIGATION | Case No. C 99-20137 JF (RS)<br>Lead Case No. C 98-20946 JF (RS)<br>MDL Case No. 1257 |
| This order relates to:<br><br>*Plancich, et al. v. Cable News Network LP, LLLP, et al.* | ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT |

Defendants move for summary judgment with respect to the claims of the last remaining plaintiffs in the consolidated action known as the Operation Tailwind Litigation. The Court has considered all of the arguments and evidence presented by the parties and, for the reasons discussed below, the Court will grant the motions.

**I. BACKGROUND**

In this action, Plaintiffs Keith Plancich ("Plancich"), Denver Minton ("Minton") and Mark Kinsler ("Kinsler") assert claims for defamation arising out of Defendants' publication of news reports regarding a secret mission known as "Operation Tailwind" that was mounted during the Vietnam War. The news reports consisted of two installments of a magazine-style television

show called "NewsStand" aired on Cable News Network ("CNN") and one article published in Time Magazine ("Time").

The first NewsStand report, titled "Valley of Death," aired on CNN on June 7, 1998. The program described Operation Tailwind as a "top secret" military operation in 1970 in Laos, where the United States publicly had denied conducting military operations. The report stated that the operation was carried out by Studies and Observation Group ("SOG") forces and Montagnard mercenaries with Air Force and Marine air support. The report further stated that the target of the mission was a group of American defectors, that the hunting and killing of American defectors was a priority of SOG missions, that American defectors in fact were killed during Tailwind, that a deadly nerve gas known as sarin was dropped on a village base camp the night before SOG commandos arrived, and that upwards of 100 dead bodies were found in the camp afterward, including civilian women and children. During the broadcast, a number of 1970s era photographs were shown on the screen for a few seconds. Plancich, Minton and Kinsler, all of whom were members of SOG, appeared in some of these photographs; however, none of them was named in the broadcast. Plancich and Minton were part of the SOG ground force on the Tailwind mission; Kinsler had left Vietnam at the time of the events in question and did not participate in Tailwind.

The Time article was published the following day on June 8, 1998 (cover date June 15). The article's headline read: "Did the U.S. Drop Nerve Gas? A CNN investigation charges that the U.S. used gas in 1970 to save troops sent into Laos to kill defectors." The article described Tailwind as a "top secret" operation that took place inside Laos, where the United States was not supposed to be, stated that the purpose of the mission was to target American defectors and that nerve gas was used. The article was accompanied by six twenty-eight year old photographs. One photograph showed thirteen soldiers posing for a group shot. Four of the soldiers were identified by name and quoted in captions. None of the Plaintiffs was identified, quoted or discussed in the article. Plancich claims that he is one of the soldiers pictured in the group shot; neither Minton nor Kinsler appeared in any of the photographs.

On June 14, 1998, after the original broadcast's report of the military's use of nerve gas

2

Case No. C 99-20137 JF (RS) / Lead Case No. C 98 20946 JF (RS)
ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
(JFLC2)

had met with criticism, CNN aired a follow-up NewsStand report focusing on the controversy over what kind of gas had been dropped. The report stated that senior military officials were asserting that tear gas, not sarin, was used during Tailwind, and that the United States Department of Defense ("DOD") was conducting an investigation.

The DOD ultimately concluded that there was no evidence that sarin gas was used in Operation Tailwind. Moreover, several people who had been interviewed for the reports complained that their statements were used out of context and in a misleading fashion. CNN and Time subsequently issued retractions stating that they did not have enough evidence to support the assertions made in the reports.

Plaintiffs assert defamation claims against CNN, Peter Arnett ("Arnett"), Time, Inc. ("Time"), Time Warner, Inc., and AOL Time Warner, Inc.

## II. LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of informing the Court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party meets this initial burden, the burden shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. *Anderson*, 477 U.S. 242, 248-49; *Barlow v. Ground*, 943 F. 2d 1132, 1134-36 (9th Cir. 1991).

## III. DISCUSSION

**A.    Motion Of Time Warner, Inc. And AOL Time Warner, Inc.**

Time Warner, Inc. and AOL Time Warner, Inc. move for summary judgment on the

3
Case No. C 99-20137 JF (RS) / Lead Case No. C 98 20946 JF (RS)
ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
(JFLC2)

1  ground that they did not publish the statement at issue. Time Warner, Inc. was the ultimate
2  parent company of Defendant Time, Inc. when the article was published. Time Warner, Inc.
3  subsequently merged with America Online, Inc. and the resulting company became AOL Time
4  Warner, Inc. There is no evidence that Time Warner, Inc. or AOL Time Warner, Inc. directed or
5  participated in the publication of the reports at issue. Plaintiffs do not oppose the motion of these
6  defendants. Accordingly, the Court will grant summary judgment for Defendants Time Warner,
7  Inc. and AOL Time Warner, Inc.

8  **B.     "Of And Concerning" Requirement**

9        The claims of Plancich and Minton are governed by Florida law, while the claims of
10 Kinsler are governed by Texas law. Under both Florida and Texas law, an essential element of a
11 defamation claim is that the publication is "of and concerning" the plaintiff. *See Allied*
12 *Marketing Group, Inc. v. Paramount Pictures Corp.*, 111 S.W.3d 168, 173 (2003); *Thomas v.*
13 *Jacksonville Television, Inc.*, 699 So.2d 800, 804-05 (1997). The "of and concerning"
14 requirement first was raised in connection with Defendants' motions to dismiss. The Court
15 concluded that for purposes of pleading, the Court would assume that any plaintiff who was
16 named, pictured or interviewed had met the "of and concerning" requirement. The Court
17 reserved judgment as to whether any plaintiff could show an "actual linkage" between himself
18 and the allegedly defamatory statements so as to survive a motion for summary judgment. *See*
19 Hrg. Trans. 2/14/00.

20       After reviewing the briefing and the relevant case law in connection with Defendants'
21 subsequent motions for summary judgment, including supplemental briefing specifically
22 addressing the "of and concerning" requirement, the Court concludes that the publications in
23 question most fairly are characterized as impersonal criticism of the United States government
24 and thus are entitled to absolute protection under the First Amendment.

25       In *New York Times v. Sullivan*, a city commissioner of Montgomery, Alabama, whose
26 duties included supervision of the police department, brought a libel action based upon a full-
27 page editorial style newspaper advertisement published in the New York Times. The
28 advertisement stated that civil rights demonstrators in the south were being confronted with "an

unprecedented wave of terror," and pointed to certain police conduct as illustration of this wave of terror. The Alabama Supreme Court held that, because it was common knowledge that police are under the control of a single city commissioner, criticism of the police was understood to be criticism of that controlling official. The United States Supreme Court rejected this proposition, holding that "[t]here is no legal alchemy" by which a state may transmute "criticism of government, however impersonal it may seem on its face, into personal criticism, and hence potential libel, of the officials of whom the government is composed." *New York Times v. Sullivan*, 376 U.S. 254, 292 (1964). The Court went on to explain as follows:

> Raising as it does the possibility that a good-faith critic of government will be penalized for his criticism, the proposition relied on by the Alabama courts strikes at the very center of the constitutionally protected area of free expression. We hold that such a proposition may not constitutionally be utilized to establish that an otherwise impersonal attack on governmental operations was a libel of an official responsible for those operations.

*Id.*

In a subsequent case, *Rosenblatt v. Baer*, the Court characterized this aspect of its *New York Times* decision as holding that: "in the absence of sufficient evidence that the attack focused on the plaintiff, an otherwise impersonal attack on governmental operations cannot be utilized to establish a libel of those administering the operations." *Rosenblatt v. Baer*, 383 U.S. 75, 80 (1966). In *Rosenblatt*, the plaintiff was the county supervisor who reported to the three county commissioners responsible for managing a recreation area that was used primarily as a ski resort. A public controversy developed as to whether the plaintiff and the three commissioners were operating the recreation area up to its full potential. The state legislature enacted a law transferring control of the recreation area to a special five member commission; plaintiff was fired as part of the transfer of responsibility to the new commission. A local newspaper columnist subsequently published a column stating that the new commission was reporting far greater revenues that had been reported for the recreation area in prior years, and questioning "[w]hat happened to all the money last year? and every other year?" The plaintiff was not mentioned or referenced in the column. However, he filed a libel action asserting that the column imputed him with mismanagement and peculation during his tenure. A jury awarded the

plaintiff damages based in part upon the trial court's instruction that damages were appropriate if the column cast suspicion indiscriminately on the small number of individuals who composed the former management group, whether or not the imputation of misconduct was "of and concerning" the plaintiff specifically.

The Supreme Court held that the column was an impersonal discussion of government activity, and that the jury improperly had found liability solely on the basis of the plaintiff's relationship to the government agency. *Id.* at 82. The Court held that "[a] theory that the column cast indiscriminate suspicion on the members of the group responsible for the conduct of this governmental operation is tantamount to a demand for recovery based on libel of government, and therefore is constitutionally insufficient." *Id.* at 83. The Court held expressly that, whether or not the plaintiff was a public official, he bore the same burden to demonstrate that statements about a group to which he belonged were "of and concerning" him. *Id.*

The Court concludes that these decisions preclude Plaintiff's claims in the instant case. After carefully reviewing the two NewsStand broadcasts and the Time article, the Court concludes as a matter of law that the publications constituted impersonal criticism of the United States Government. The headline of the Time article illustrates the point, reading: "Did the U.S. Drop Nerve Gas? A CNN investigation charges that the U.S. used gas in 1970 to save troops sent into Laos to kill defectors." Both the article and the broadcasts focused on the conduct of "the U.S." and "the United States military." In fact, the point was made that the Tailwind operation was so secret that only a few of the SOG officers knew the target, and that most of those involved did not know all the details of the operation. None of the three Plaintiffs was named, quoted or discussed in the broadcasts or the articles. They did appear in 1970s era photographs shown on the air and in the article along with other members of SOG, but were not otherwise identified. In the words of the *Rosenblatt* decision, Plaintiffs' theory is that the broadcasts and article cast "indiscriminate suspicion on the members of the group responsible for the conduct of this governmental operation." *Rosenblatt*, 383 U.S. at 83. However, this theory "is tantamount to a demand for recovery based on libel of government, and therefore is constitutionally insufficient." *Id.*

1    Plaintiffs argue that the *New York Times* and *Rosenblatt* decisions are inapplicable to
2 claims of private individuals who are not public officials or public figures. Even assuming
3 without deciding that Plaintiffs in fact are private individuals,[1] the Supreme Court's holdings
4 discussed above do apply. The *Rosenblatt* decision held expressly that, whether or not the
5 plaintiff was a public official, he bore the same burden to demonstrate that statements about a
6 group to which he belonged were "of and concerning" him. *Rosenblatt*, 383 U.S. at 83.

7    This Court's characterization of the CNN and Time publications as criticism of the
8 United States government is consistent with numerous decisions applying *New York Times* and
9 *Rosenblatt*. *See, e.g., Dean v. Dearing*, 263 Va. 485, 489-90 (Va 2002) ("A member of a
10 governmental group against which an allegedly defamatory statement is made can sustain a
11 common law action for defamation only if that member can show the statement specifically
12 implicated that member or each member of the group"); *Andrews v. Stallings*, 119 N.M. 478,
13 (N.M. Ct. App. 1995) ("[I]n a close case on the issue of whether defamatory speech is 'of and
14 concerning' an individual or the government itself, it should be construed as of and concerning
15 the government") (quotations and citation omitted); *Fornshill v. Ruddy*, 891 F.Supp. 1062, 1070-
16 71 (D. Md. 1995) (holding that report accusing U.S. Park Police of a cover-up in the
17 investigation into Vincent Foster's death was "of and concerning" the government and not
18 plaintiff officer, even though plaintiff was one of only officers mentioned by name and was
19 identified as first officer on the scene).

20    Accordingly, the Court will grant Defendants' motions for summary judgment on the
21 ground that, as a matter of law, the publications in question constituted impersonal criticism of
22 the United States government rather than being "of and concerning" Plaintiffs in particular.

---

[1] Defendants contend that Plaintiffs are public officials for purposes of First Amendment analysis.

7

Case No. C 99-20137 JF (RS) / Lead Case No. C 98 20946 JF (RS)
ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
(JFLC2)

**IV. ORDER**

Defendants' motions for summary judgment are GRANTED.

DATED: 9/21/06

_____
JEREMY FOGEL
United States District Judge

Copies of Order served on:

Counsel for Plancich Plaintiffs:

Roger Townsend
Alexander Dubose Jones & Townsend LLP
1844 Harvard Street, TX 77002

James R. Moriarty
Kevin Leyendecker
Moriarty Leyendecker PC
1150 Bissonnet Street
Houston, TX 77005

Counsel for Defendants:

Kevin T. Baine
Thomas G. Hentoff
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005

Steven R. Manchester
Manchester, Williams & Seibert
125 S. Market Street, Suite 1100
San Jose, CA 95113

9

Case No. C 99-20137 JF (RS) / Lead Case No. C 98 20946 JF (RS)
ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
(JFLC2)